IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | Case No. 3:24-mj-00622-KFR |
| --- | --- |
| Plaintiff, | |
| vs. | |
| CARYN DENISE EVAN | |
| Defendant. | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, KATIE YARBOROUGH, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND TASK FORCE OFFICER BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant for **CARYN DENISE EVAN** (hereinafter "SUBJECT"). An investigation has revealed that there is probable cause to believe that the SUBJECT has committed violations of Title 49 United States Code § 46504 (interference with flight crew members and attendants).

2. I am familiar with the information contained in this affidavit based upon the investigation I have conducted, in conjunction with other federal, state, and local law enforcement officials, which has included exchanging information with law enforcement officers and others; reviewing notes, reports, database records and other information

acquired during this investigation; reviewing evidence obtained therefrom; and interviewing witnesses.

3. Because I submit this affidavit for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me or the government. I have only included those facts necessary to establish probable cause to believe that SUBJECT has committed a violation of 49 U.S.C. § 46504.

4. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been a SA with the FBI for approximately five and a half years. I am currently assigned to the White-Collar squad in the FBI Anchorage Field Office. During my time with the FBI, I have led and participated in investigations involving violent crimes, sexual misconduct, threats, robberies, health care fraud, fraud against the government, and drug trafficking. I also investigate violations of federal law occurring in the Special Aircraft Jurisdiction of the United States.

## RELEVANT STATUTES AND REGULATIONS

5. The relevant statutory authority and terms used in this affidavit and its attachments are described and defined below.

    a. 49 U.S.C. § 46504 states: "An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined

under title 18, imprisoned for not more than 20 years, or both. However, if a dangerous weapon is used in assaulting or intimidating the member or attendant, the individual shall be imprisoned for any term of years or for life."

**PROBABLE CAUSE**

6. On November 12, 2024, at approximately 8:45 p.m., I received a call from FBI Anchorage Operations Center notifying me of a report from Anchorage Airport Police Department (AAPD) regarding a passenger aboard Alaska Airlines Flight 46 who caused an interference with the flight crew during the flight.

7. Alaska Airlines Flight 46, registered aircraft number N577AS, departed from Bethel, Alaska on November 12, 2024, and arrived in Anchorage, Alaska at approximately 8:35 p.m. that same day. After the flight landed at Ted Stevens Anchorage International Airport, AAPD officers and I conducted the interviews of the flight crew, witnesses, and victim. After conducting those interviews, an AAPD officer, myself, and another FBI agent interviewed SUBJECT.

8. During the interviews of the flight attendants, they stated SUBJECT was seated in a middle seat (7B) next to her husband, who was sitting in the aisle seat (7C). As the aircraft was starting its descent to land in Anchorage, passengers near Row 7 turned on their call light requesting assistance. Flight Attendant 1 approached the passenger who requested assistance and observed SUBJECT initially laying her head on her husband's shoulder. SUBJECT then began yelling incoherently and striking her husband in the left shoulder and upper chest area. Flight Attendant 1 called the other flight attendants to come

3:24-mj-00622-KFR  3
Case 3:24-mj-00622-KFR    Document 1-1    Filed 11/14/24    Page 3 of 8

forward to assist with the situation. At the time, the flight attendants had been performing their duty of preparing the cabin for arrival.

9. The flight attendants asked SUBJECT to move to a seat in the back of the cabin to de-escalate the situation. SUBJECT refused to move from her seat. Her husband told them he was willing to move and was reseated in the last row of the aircraft.

10. Flight Attendant 2 was able to get SUBJECT to calm down and sit in her seat, which allowed the flight crew to continue preparing the cabin for arrival in Anchorage. Moments after the flight crew resumed preparing the cabin for arrival, they received another call light from Row 6. SUBJECT was moving uncontrollably, flailing about, and interfering with the passengers around her. Flight Attendant 2 paged overhead asking for an able-bodied person to help assist with controlling SUBJECT. A nurse seated in 6C volunteered to sit next to and help control SUBJECT for the remainder of the flight. Flight Attendant 1 notified the aircraft captain that law enforcement and medical were needed upon arrival. The flight attendants then took their seats for the aircraft landing.

11. After landing and while taxiing to the gate, Flight Attendant 3 immediately went to check on SUBJECT and found her hitting her head on the seat in front of her and flailing her arms uncontrollably. Flight Attendant 3 was concerned SUBJECT's actions were going to hurt passengers around her. Flight Attendant 3 requested assistance from Flight Attendant 2, who put SUBJECT in flex cuffs. Once in flex cuffs, SUBJECT immediately calmed down. Flight Attendant 1 then notified the flight deck that SUBJECT had been placed in restraints.

//

12. The flight attendants reported feeling intimidated by SUBJECT's aggressive behavior and feared for both their safety and the safety of the passengers.

13. The flight attendants stated SUBJECT was served one chardonnay and water while in flight and SUBJECT's husband was served approximately two beers. SUBJECT's husband was not combative and showed no signs of intoxication. SUBJECT did not show signs of intoxication upon ordering her alcoholic beverage. The flight attendants were told by SUBJECT's husband that SUBJECT had consumed alcoholic drinks prior to boarding the flight due to her anxiety related to flying.

14. When Flight Attendant 1 was asked by FBI to describe the incident between SUBJECT and her husband, Flight Attendant 1 stated it appeared to be an intentional act in which SUBJECT had two closed fists and was hitting her husband in the shoulder and upper chest area. SUBJECT's husband was trying to keep SUBJECT calm and control her to prevent her from lashing out at other passengers. At the time, Flight Attendant 1 did not know if the incident was alcohol related or a medical issue. It was at this point Flight Attendant 1 felt that SUBJECT could be a danger to other passengers and the flight crew. Flight Attendant 1 observed SUBJECT continuing to flail her arms and act erratically, unintentionally hitting those around her.

15. When AAPD and FBI interviewed SUBJECT's husband, he stated that SUBJECT's anxiety while flying is so severe that he has to hold her tightly to control her. He did not recall his wife hitting him with closed fists but rather using open palms and pushing him. He stated SUBJECT does not have any medical issues. He stated this was not typical behavior that SUBJECT exhibited on the flight. The behavior was exacerbated because she

had consumed too much alcohol. Her husband recalled SUBJECT having had approximately two or three drinks prior to boarding the flight and two drinks while in flight. He stated this is not a normal amount for her to consume as they do not have ready access to alcohol at home.

16. SUBJECT's husband stated his wife often gets mad with and aggressive towards him when she consumes alcohol due to prior relationship issues. No conversations about those prior issues were discussed prior to or during this flight, however. He believed her behavior became aggressive towards the end of the flight after she rapidly consumed the rest of her alcoholic beverage. He described her behavior of being tense and tightly grabbing things or him as normal, but hitting her own head on the seats in front of her is not.

17. An off-duty police officer who was a passenger on the flight and seated in the row behind SUBJECT was interviewed on November 13, 2024. The off-duty officer confirmed he had witnessed the incident on the flight as well as having had observed SUBJECT and her husband prior to boarding the flight at the Bethel, Alaska airport. When he observed SUBJECT at the terminal and her interactions with the people around her, he described her as being very intoxicated and having had an aggressive demeaner. He recalled observing SUBJECT bumping into people in the terminal before the flight. After bumping into them, she would turn to stare at them, hug them as if she was being apologetic, but then immediately get mad and yell aggressively at them saying, "fuck you, bitches, fucking bitches." He observed her husband trying to keep her with him and away from other people.

//

18. During the flight, the off-duty officer had worn his earbuds and did not hear some of the incident. He recalled it was around the time the captain made the announcement they were starting their decent to Anchorage, when he observed SUBJECT start acting up and flailing her body, and her husband couldn't calm her down. He heard her screaming at the flight attendants and her husband. He wasn't sure if she hit her husband or the chair, but that was when he saw all the passengers around them start hitting their call light for the flight attendants. He heard a flight attendant tell SUBJECT to calm down because she didn't want to put her on the no-fly list with Alaska Airlines. He observed the nurse who was put beside SUBJECT trying to stop SUBJECT from her hitting her head on the seat in front of her. He then saw the nurse flinch and appear to have a stunned expression. He stated it looked as if she was trying to stop SUBJECT from hitting her and blocking SUBJECT's actions to protect herself. He stated the nurse appeared to look visually relieved when airport police got on the plane, as if she was exhausted from sitting beside SUBJECT.

19. After reading SUBJECT her Miranda Rights, SUBJECT did not wish to speak with AAPD and FBI. AAPD and FBI immediately ceased the interview and notified SUBJECT she was being arrested for interference with the flight crew.

20. Upon being transported to Hiland Mountain Correctional Center, SUBJECT was administered a Breath Alcohol Content test (BrAC) at approximately 11:25 p.m. The AAPD officer and I overheard the employee administering the test state that it reported SUBJECT had a BrAC of 0.255.

//

## CONCLUSION

21. Based upon the information above, your affiant submits that there is probable cause to believe that CARYN DENISE EVAN, interfered with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties by assaulting and intimidating a flight crew member or flight attendant of the aircraft, in violation of 49 U.S.C. § 46504.

*[signature]*
KATIE YARBOROUGH
Special Agent, FBI

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 4(d) for an arrest warrant on this ___ day of November 14, 2024.

*[signature]*
HON. KYLE F. REARDON
United States Magistrate Judge
District of Alaska